IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Charles Wesley Clinkscales, | ) | |
| | ) | C/A No. 8:10-2290-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| | ) | |
| Walgreen Company | ) | |
| d/b/a Walgreens, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant Walgreen Company's ("Walgreens'") Motions for Summary Judgment (Dkt. # 27) and Attorney's Fees (Dkt. # 42). Plaintiff Charles Wesley Clinkscales ("Clinkscales") filed responses opposing these motions. (Dkt. # 35, 37, 46). On December 1, 2011, a hearing was held on Walgreens' Summary Judgment Motion and the court took the motion under advisement. For the reasons set forth below, Walgreens' Motion for Summary Judgment is granted on Clinkscales' federal claims. However, the court declines to exercise supplemental jurisdiction over Clinkscales' state law claims for breach of contract. Additionally, Walgreens' Motion for Attorney's Fees is denied.

**Background/Procedural History**

In 2003, Clinkscales began working as a pharmacist for Walgreens, and in the summer of 2005, he began working the night shift at a Walgreens in Anderson, South Carolina. On June 9, 2010, due to a lighting strike, there was a problem with the Walgreens' pharmacy computer which caused prescriptions sales not to be

acknowledged as sold, but rather to remain in "ready" status. On June 18, 2010, Clinkscales was told by the Walgreens' store manager, Paul Morash ("Morash"), to perform a bin reconciliation and cash out 204 prescriptions at the register for $0.00. A bin reconciliation essentially entails comparing the list of the prescriptions that the pharmacy computer indicates are ready with the prescriptions that are physically in the bins. (Morash Aff. ¶ 9). If there are any prescriptions that should be ready and in the bins, but are not, then the pharmacist is to investigate to determine whether those prescriptions were sold without being properly scanned so as to move them from ready to sold status, put back into stock, or stolen. (Morash Aff. ¶ 9).

Clinkscales initially began the bin reconciliation and discovered 204 prescriptions were in ready status, but were not in the bins. Clinkscales discovered that 14 of those prescriptions had comments in the computer indicating that they were sold. Clinkscales was unsure about how to handle the remaining 190 prescriptions. On June 19, 2010, Clinkscales sent the following email to Morash:

> Paul,
>
> Jackie told me tonight that you told her for me to do a bin reconciliation to see if we could clear up the register problem I believed occurred Tuesday 06/15 where rx's were sold but still say ready in work Q on intercom+. The report is done over 200 rx's were in (ready not in bin status)- highlighted in blue or rx's that were generated after 06/15? - (I hope this makes verification of register transactions easier). The report is in mgr. box in office.
>
> Wes

(Pl.'s Dep. Ex. 11). Approximately an hour later, Clinkscales sent a second email to Morash:

2

> Paul,
>
> I just saw the note I jotted down of what Jackie was telling me that you were telling her for me to do. I wrote down that any item I could not find on bin recon. - you wanted me to price modify to $0. Does this mean I'll need to print the 200 leaflets for the rx's that showed up (ready not in bins) then ring up at register.  Also if there are rx's on bin recon that were not involved in the register problem how are they accounted for?  I'm not sure how to correctly do this.
>
> Wes

(Pl.'s Dep. Ex. 12).

Clinkscales alleges that he refused to perform the bin reconciliation because he believed it would result in unlawful billing to government health care programs.  Morash stated that he thought Clinkscales did not understand how to perform the bin reconciliation and he simply assigned the task to someone else. (Morash Aff. ¶ 12). Morash and Plaintiff never spoke about the bin reconciliation and another pharmacist ended up performing the bin reconciliation.

Clinkscales also alleges that on June 20th, he sought advice from the Walgreens' Help Center which advised him that the prescriptions did not meet the criteria to be marked as sold, as the prescriptions were not over eleven (11) days old.  The Help Center also told him that when they were, the store should open a new ticket.

On July 1-2, 2010, Clinkscales was told by Morash to stock inventory and according to Morash not much was stocked. (Morash Aff. ¶ 15).  Morash reviewed the store surveillance video which showed Clinkscales performing "lunges" with detergent bottles, not wearing his pharmacy jacket as required by Walgreens' policy, snacking, and filling prescriptions by staging them (i.e. filling numerous prescriptions at once which Walgreens prohibits because of the increased likelihood of mistakes).  *Id*.  On July 15, 2010, Clinkscales was given two written warnings for this conduct.  Clinkscales took

vacation days July 15th-18th.

On July 19, 2010, Clinkscales' psychiatrist of eleven years told him he should not return to work due to his bi-polar condition. Beginning July 19, 2010, Clinkscales was placed on short disability and later he was on long term disability. While it is unclear from the record whether Clinkscales currently remains on long term disability, his employment with Walgreens ended on July 15, 2011. (Dkt. # 40-2). In September 2010, Clinkscales brought this action alleging the following claims: 1) Retaliation under the False Claims Act, 31 U.S.C. § 3730(h) ("FCA"), 2) Breach of Contract - Employee Contract, and 3) Breach of Contract Accompanied by Fraud.

**Standard of Review**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must

demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the Clinkscales's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### Discussion

**1) Claims under the False Claims Act**

As noted above, Clinkscales raises a retaliation claim pursuant to the FCA.  The FCA prohibits any person from presenting a false or fraudulent claim for payment or approval to the United States government. The FCA also contains a whistleblower provision which provides, in relevant part:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent on behalf of the employee, contractor, or agent or associated others in furtherance of other efforts to stop 1 or more violations of this subchapter

31 U.S.C. § 3730(h). To establish an FCA retaliation claim, a plaintiff must show that: 1) he engaged in conduct protected under the FCA; 2) his employer knew of these acts; and 3) the employer took an adverse employment action against him because of those acts. *See Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 343 (4th Cir. 2010).[1]

### a) Protected Activity

Walgreens argues, inter alia, that Clinkscales did not engage in protected activity when he simply communicated with others regarding the appropriate procedure for performing a bin reconciliation. Clinkscales argues that he expressed his concerns about the bin reconciliation and refused to participate in the unlawful action, i.e. he tried to stop it, and thus his actions are protected activity under the FCA.

---

[1] The elements differ for a FCA violation claim and an FCA retaliation claim in that to state a claim for an FCA violation, a plaintiff must allege that the defendant actually violated the FCA by knowingly submitting a false claim or providing faulty goods to the government. To state an FCA retaliation claim, however, a plaintiff must show that he suspected that the defendant submitted a false claim, not that the defendant actually submitted one. *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097 (9th Cir. 2008). Thus, proving a violation of § 3729 is not an element of a § 3730(h) cause of action. *See Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,* 545 U.S. 409, 416 n. 1 (2005) (citations omitted). See *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 n. 7 (4th Cir. 1999)(holding there is no requirement that the government have suffered damages as a result of the fraud).

The FCA protects a wide variety of conduct, including actions that are taken in furtherance of a whistleblower action under the FCA, as well as actions taken to stop a violation of the FCA. 31 U.S.C. § 3730(h).[2]  The relevant inquiry when determining whether an employee's actions are protected under § 3730(h) is whether: (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.  *Fanslow v. Chicago Mfg. Center, Inc.*, 384 F.3d 469, 480 (7th Cir. 2004).  "[A]n employee who specifically characteriz[es] the employer's conduct as illegal or fraudulent or recommend[s] that legal counsel become involved may be engaging in protected activity." *Mann v. Heckler & Koch Defense, Inc.*, 639 F.Supp.2d 619, 627 (E.D.Va. 2009)(internal citation omitted). However, one who simply reports "mischarging" or investigates "the employer's non-compliance with federal or state regulations" does not. *Zahodnick*, 135 F.3d at 914.

Evaluating Clinkscales' allegations, the court finds his statements to Walgreeens about the bin reconciliation do not constitute protected activity under the FCA.  *See U.S. ex. rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 735 (4th Cir. 2010) (affirming summary judgment against FCA retaliation claim; "Simply reporting his concern of a mischarging to the government to his supervisor does not suffice to establish that [an employee] was acting 'in furtherance of' a qui tam action. . . . An employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation") (internal quotation marks and citation omitted).  The courts find that Clinkscales'

---

[2]Clinkscales correctly notes that a 2009 amendment to § 3730(h) expanded the definition of protected activity to include "efforts to stop 1 or more violations" of the FCA.

conduct amounts to merely asking how he could correctly perform a job function, not reporting or attempting to stop misconduct under the FCA. Clinkscales did not state that he thought the bin reconciliation was illegal or unlawful or express any concerns about it creating the potential for fraudulent billing. He also did not refuse to complete the bin reconciliation, he merely asked how to do it correctly. Such activity is not protected by the FCA whistleblower provision. *See Zahodnick*, 135 F.3d at 914.

> Courts draw the line, however, when plaintiffs simply report their concerns to a supervisor, finding that such conduct does not raise a "distinct possibility" of a suit under the FCA. *See Zahodnick v. Int'l Bus. Mach. Corp.*, 135 F.3d 911, 914 (4th Cir. 1997) (plaintiff who reported his co-workers' false billings to his supervisor did not take acts "in furtherance of a qui tam suit" as "the record disclosed that [he] merely informed a supervisor of the problem and sought confirmation that a correction was made. . . . Simply reporting his concern of a mischarging to the government to his supervisor does not suffice to establish that Zahodnick was acting 'in furtherance of' a qui tam action"); *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 516 (6th Cir. 2000) (plaintiff who informed supervisors, union stewards, and BellSouth auditors about the falsification of repair records was not engaged in protected activity because "[a]lthough internal reporting may constitute protected activity, the internal reports must allege fraud on the government" and legal action was not a reasonable or distinct possibility where the plaintiff was "merely reporting wrongdoing to supervisors").

*Glynn v. Impact Science & Technology, Inc.*, --- F.Supp.2d ----, 2011 WL 3792358 * 6 (D.Md. 2011).

Clinkscales alleges only that he contacted Morash about the bin reconciliation and how it should be performed. Clinkscales does not allege that he informed Moresh of his suspicions that false claims might be submitted by Walgreens to a government agency, nor is there any evidence he conveyed to Morash that he

8

questioned the legality of the reconciliation. As noted above, a plaintiff who reports "mischarging" or investigates, without more, "the employer's non-compliance with federal or state regulations" is not engaged in protected activity. *Mann*, 639 F.Supp.2d 619. Accordingly, the court finds that Walgreens is entitled to summary judgement on Clinkscales' FCA retaliation claim as a matter of law.

### b) Knowledge

Even if Clinkscales could show that he had engaged in protected activity, Walgreens argues it did not know that Clinkscales had engaged in any alleged protected activity. The court agrees.

As noted above, Clinkscales' email to Morash asked how to "correctly" perform the bin reconciliation. Clinkscales argues he expected this to convey he was concerned about its legality. (Pl.'s Dep. 114-116). However, in FCA retaliation cases, courts have found notice when "the plaintiff . . . produced evidence that he or she voiced a concern about fraud on the federal government or referenced a qui tam FCA action to the employer." *United States ex rel. Lockyer v. Haw. Pac. Health*, 490 F.Supp.2d 1062, 1084–85 (9th Cir.2007) aff'd, 343 F. App'x 279 (9th Cir. 2009). On the other hand, "when an employee voices complaints but does not refer to any allegations of fraudulent conduct against the government, the employer lacks the requisite knowledge to make out a FCA retaliation claim." *Id.* at 1085.[3] Accordingly,

---

[3] The court notes that Clinkscales also contends that he informed the assistant store managers that the bin reconciliation was illegal, but he specifically testified that he did not know if this was ever conveyed to Morash. (Pl.'s Dep. at 96-97). As Morash is the person who imposed the discipline on behalf of Walgreens, it is his knowledge with which the court is concerned because he cannot be found to have retaliated or discriminate against Clinkscales because of whistle-blowing activities if he was unaware of such activity.

9

here, Walgreens lacked any knowledge that Clinkscales had engaged in protected activity under the FCA.

### c) Adverse Employment Action

Finally, even if Clinkscales could show that he had engaged in protected activity and Walgreens had knowledge of this, his claim nevertheless fails on the third element, as Clinkscales has not shown that Walgreens retaliated against him as a result of any FCA protected activity.[4]

The Fourth Circuit has not decided whether the burden-shifting analysis utilized by the courts in analyzing claims under Title VII of the Civil Rights Act applies to whistleblowing claims under the FCA. However, other courts addressing this issue have concluded the *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), burden-shifting framework applies to FCA retaliation claims and an affirmative defense is available to the employer. *See, e.g., Hill v. Booz Allen Hamilton, Inc.*, 2011 WL 6000501 (D.Guam Nov. 16, 2011); *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 346 (6th Cir. 2007)(applying *McDonnell Douglas* framework to an FCA retaliation claim). *U.S. ex rel. Karvelas v. Melrose–Wakefield Hospital*, 360 F.3d

---

[4] In his Complaint, Clinkscales also states that he was retaliated against through the issuance of two written warnings and that he was constructively discharged. Under the doctrine of constructive discharge, relief is available where the plaintiff establishes "that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 394 (5th Cir. 2002). Constructive discharge may be claimed when retaliation against a working whistleblower becomes so severe that the individual terminates employment rather than continue to tolerate the mistreatment, or when the working conditions become so intolerable that a reasonable person "in the plaintiff's shoes" would quit working for the employer. Other than his conclusory allegation that he was constructively discharged, Clinkscales has not presented any evidence that the working conditions were intolerable. Further, the issuance of two written warnings under the facts of this case was not such a severe action so as to support a constructive discharge claim.

220, 235 (1st Cir. 2004); *Dookeran v. Mercy Hospital of Pittsburgh*, 281 F.3d 105, 107 (3rd Cir. 2002); *Norbeck v. Basin Elec. Power Co-op.*, 215 F.3d 848, 850–51 (8th Cir. 2000). Moreover, the legislative history clearly indicates Congress intended courts to apply a burden-shifting analysis.

> The Senate Report for the False Claims Amendments Act of 1986 states, in part:
>> Section [3730(h) ] provides relief only if the whistleblower can show by a preponderance of the evidence that the employer's retaliatory action resulted 'because' of the whistleblower's participation in a protected activity. Under other Federal whistleblower statutes, the 'because' standard has developed into a two-pronged approach. One, the whistleblower must show the employer had knowledge the employee engaged in 'protected activity' and two, the retaliation was motivated, at least in part, by the employee's engaging in protected activity. Once these elements have been satisfied, the burden of proof shifts to the employer to prove affirmatively that the same decision would have been made even if the employee had not engaged in protected activity.
>
> S.Rep. No. 99–345 at 35, reprinted in 1986 U.S.C.C.A.N. 5266, 5300.

*U.S. ex rel. Berglund v. Boeing Co.*, 2011 WL 6182109 * 17-18 (D.Or. 2011).

Therefore, the court will apply the burden-shifting analysis in evaluating Clinkscales' claims. Pursuant to this framework, once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII action). The defendant's burden "is a burden of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once a defendant demonstrates a legitimate, nondiscriminatory reason, the plaintiff must demonstrate

11

by a preponderance of the evidence that the proffered reason was "'not its true reason[ ], but [was] a pretext for discrimination.'" *Merritt*, 601 F.3d at 294 (internal quotation omitted). "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." *Id*. at 294–95.

Clinkscales was issued two written warnings on July 15, 2010. As Clinkscales admitted in his deposition, he was not suspended or fired, or given a decrease in pay or a different job title. (Pl.'s Dep. 316-18). The FCA unambiguously limits retaliation claims to adverse actions taken "in the terms or conditions of employment." 31 U.S.C. 3730(h)(1). *See also Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 847–48 (9th Cir. 2002) (holding conduct does not constitute "retaliation" under the FCA unless it would be sufficient to constitute an adverse employment action under Title VII). Walgreens contends that a written warning does not rise to the level of disciplinary action because it does not constitute an "adverse employment action." A written warning without more does not constitute an adverse employment action. However, in certain situations, a written warning may constitute an "adverse employment action." The Fourth Circuit has held that when an employee is subjected to "progressive discipline," a disciplinary action which "thrust[s] [an employee] further along the discipline track and closer to termination," this constitutes a "tangible, adverse consequence." *Nye v. Roberts*, 145 Fed. App'x 1, 6 (4th Cir. 2005). Because Clinkscales progressed from a verbal warning to a more serious form of discipline, a written warning, he arguably suffered the same type of "tangible, adverse consequence" that amounts to an adverse employment

action.

Assuming the written warnings do in this case, in fact, constitute adverse employment actions, the court finds that Clinkscales has presented sufficient evidence of causation to satisfy the final element of his prima facie case. The Fourth Circuit has held that, to establish a prima facie case, "very little evidence of a causal connection is required" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a prima facie retaliation case. *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998). Walgreens then has the burden to produce a legitimate, non-retaliatory reason for taking the adverse actions.

Moresh was the sole person who decided to issue Clinkscales the two warnings (Pl.'s Dep. 207; Moresh Aff. ¶ 16), and he testified he did not think Clinkscales' email questioning the bin reconciliation meant Clinkscales was objecting to the legality of the reconciliation. Morash testified he gave Clinkscales the two written warnings based upon misconduct which was captured on video - Clinkscales not wearing a pharmacy jacket in violation of company policy, doing "lunges," snacking, and staging when filling prescriptions. Moreover, while he offers explanations for his behavior, Clinkscales admits engaging in this conduct. The court finds Walgreens has offered legitimate, non-retaliatory reasons for the issuance of the warnings to Clinkscales.

Because Walgreens has proffered a legitimate, non-retaliatory reason for its actions, Clinkscales bears the burden of demonstrating that the real reasons were, in fact, unlawful. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000). Clinkscales argues that Walgreens' proffered reasons are pretextual

13

or false. Clinkscales, however, has not presented any evidence that Walgreens' reasons for issuing the written warnings were false or pretextual. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278–81 (4th Cir. 2000) (poor performance was a legitimate, non-pretextual reason for discharging employee). He admits the conduct which resulted in the warnings being issued to him. Further, Clinkscales has put forth no evidence from which a reasonable jury could conclude that the reasons relied on by Walgreens in making the decision to reprimand Clinkscales were false, or were in any way pretextual. Accordingly, Clinkscales' FCA retaliation claim fails and Walgreens is entitled to summary judgment.

**2) State Law Claims**

Clinkscales has brought two state law claims: breach of contract claim and breach of contract accompanied by fraud. "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir.1995). This order dismisses Clinkscales' federal claims and the court declines to exercise supplemental jurisdiction over Clinkscales' state law claims against Walgreens. Therefore, Clinkscales' breach of contract claims are dismissed without prejudice. 28 U.S.C. § 1367(c).

**3) Walgreens' Motion for Attorney's Fees**

Walgreens seeks attorney's fees for having to respond to both Clinkscales'

Sur-Reply and an Affidavit which was filed in support of Clinkscales' Sur-Reply Brief. Walgreens argues Clinkscales did not seek or obtain leave of Court pursuant to the Local Rule 1.02 prior to filing his Sur-Reply. However, after Walgreens filed this motion, Clinkscales filed a Motion for Leave to File a Sur-Reply (Dkt. # 44) which Judge Henry F. Floyd granted. (Dkt. # 45). Therefore, the court denies Walgreens' Motion for Attorney's Fees.

## Conclusion

For the foregoing reasons, Defendant Walgreens' Motion for Attorney's Fees (Dkt. # 42) is **DENIED**; and Walgreens' Motion for Summary Judgment (Dkt. # 27) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff' Clinkscales' federal claims are **DISMISSED** with prejudice. Defendant Walgreens' Motion for Summary Judgment is **DENIED** to the extent the motion seeks dismissal with prejudice of the Plaintiff Clinkscales' state law claims. Instead, pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over these state law claims. Accordingly, the Plaintiff's state law claims for breach of contract are **DISMISSED** without prejudice and this case is **DISMISSED.**

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Greenville, South Carolina
January 11, 2012